**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ORGONE CAPITAL III, LLC, DAVID BURNIDGE, LINCOLNSHIRE FISKER, LLC, KENNETH A. STEEL, JR., and ROBERT F. STEEL, individually and on behalf of a class of all those similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>KEITH DAUBENSPECK, PETER MCDONNELL, KLEINER PERKINS CAUFIELD & BYERS, RAY LANE, and JOHN DOERR,<br>                Defendants. | No. 16 C 10849<br><br>Judge Rebecca R. Pallmeyer |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs are investors in Fisker Automotive ("Fisker"), a manufacturer of electric cars. In this suit, Plaintiffs claim that Fisker's controlling shareholder, Kleiner Perkins Caufield & Byers ("Kleiner Perkins," or "KP"), committed securities fraud by concealing critical information from investors in an attempt to shore up the company—and KP's investment—with infusions of outside funding. To achieve that goal, Plaintiffs allege, Kleiner Perkins and two of its principal partners, Ray Lane and John Doerr (jointly, "Kleiner Perkins Defendants") exercised Kleiner Perkins' control of Fisker's board to retain the Chicago-based investment banking firm Advanced Equities Inc. ("AEI") to market Fisker's stock to AEI's customer base. Plaintiffs claim that the Kleiner Perkins Defendants, through AEI, issued misleading information about the state of the company to prospective investors, failing to disclose that the company was facing a liquidity crisis after the federal government froze further draw-downs of a crucial Department of Energy loan. Plaintiffs purport to represent a class of investors who purchased Fisker's securities through AEI, and who lost their investments when the company essentially shuttered operations in 2012.

The Kleiner Perkins Defendants, none of whom are residents of Illinois, have moved to dismiss the complaint for lack of personal jurisdiction and because the statute of limitations on Plaintiffs' claims has run. The two other defendants in the case, AEI principals Keith Daubenspeck and Peter McDonnell, join the statute of limitations theory. For the reasons below, Defendants' motion is granted and the complaint is dismissed without prejudice.

## BACKGROUND

Plaintiffs' complaint is accepted as true for purposes of a motion to dismiss, *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016), and the facts below are accordingly drawn from it.

Fisker Automotive was an electric car start-up which, for several years following 2008, was immensely successful in attracting venture capital investment and a loan of more than $500 million from the United States Department of Energy ("DoE"). (Compl. [1-1], at ¶ 2.) But Fisker abruptly shut down operations in 2012, in what Plaintiffs characterize as "the largest venture[-]capital-backed debacle in U.S. history." (*Id.*) Plaintiffs, investors in Fisker, claim that this failure was not a run-of-the-mill collapse, but rather the result of fraud, breaches of fiduciary duty, and civil conspiracy. (*Id.* ¶ 1.)

In short, as more fully described below, Plaintiffs allege that Defendants knew that Fisker's costs were far greater than had been anticipated and that it was incapable of meeting its production schedule, yet Defendants concealed that information as they continued to seek investment capital. The extent of the malfeasance was not widely known until 2013, when a series of events made Fisker's woes public. (*Id.* ¶ 4.) On April 17, 2013, PrivCo, a private market research firm, released a report entitled "Road to Ruin," in which it exposed Fisker's catastrophic financial situation based on thousands of pages of documents which PrivCo had obtained through Freedom of Information Act requests. (*Id.*) A week later, Congress held the first of several hearings investigating Fisker's use of taxpayer-backed loan funds awarded by the DoE, discussed further below. (*Id.*) Five months after that, on September 17, 2013, a *qui*

*tam* complaint filed in federal court in the Southern District of New York against Fisker—brought by its former Chief Financial Officer, Eric Weidner—was unsealed. (*Id.* ¶ 5.)

These three revelations painted a grim picture of Fisker's operations. In April 2010, the company secured a $528.7 million loan from the DoE, but the loan application was based on an enormous understatement of the costs associated with producing Fisker's two automobiles: the Karma, a luxury vehicle, and the Nina, a lower-cost sedan. (Compl. ¶¶ 2, 5.) Fisker's executives and financial backers had known since December 2009 that the reported costs were dramatically below what it actually cost to produce the vehicles, but they concealed that information from the DoE and from its investors to secure additional funds. (*Id.* ¶ 5.)

Plaintiffs' allegations in this suit are not against Fisker, but against its primary venture-capital backers, Kleiner Perkins Caufield & Byers and its principals, and the principals of a Chicago-based investment banking firm, Advanced Equities Inc.; each set of Defendants had a member on Fisker's board and allegedly withheld information about the state of the company in an effort to protect Kleiner Perkins' investment. (*Id.* ¶¶ 4, 6).

Plaintiffs purport to represent the class of buyers who purchased Fisker securities through AEI between August 19, 2009 and September 26, 2012. (Compl. ¶ 1.) In this case, filed in October 2016, Plaintiffs have named the following Defendants:

- Keith Daubenspeck, the co-founder and principal of AEI, and a Fisker board member
- Peter McDonnell, senior managing director of AEI
- Kleiner Perkins Caufield & Byers
- Ray Lane, a managing partner of Kleiner Perkins, and a Fisker Board member
- John Doerr, a managing partner Kleiner Perkins

(*Id.* ¶ 4.) AEI is not itself a defendant. (*See id.*)

The complaint alleges that Fisker's board of directors, which included Daubenspeck (of AEI) and Lane (of Kleiner Perkins), concealed information about Fisker's production costs from

3

DoE and Plaintiffs. (*Id.* ¶ 5.) After Fisker secured the DoE loan, Plaintiffs claim that all of the Defendants knew, but failed to disclose, that the production schedule of one of the vehicles, the Karma, was repeatedly delayed due to faulty parts and engineering changes, and that Fisker had concealed that fact from the DoE. (*Id.* ¶ 6.) Worse, Fisker executives actively lied to the DoE by reporting in a March 2011 presentation that it had begun production of the Karma when it had not. (*Id.*) DoE discovered the lie just three months later, and froze the loan in June 2011. (*Id.*) Plaintiffs allege that all of these facts—including DoE's freezing of the loan—were not disclosed publicly, or to Plaintiffs. (*Id.* ¶ 8.)

By October 2011, Fisker was in a cash crisis, resulting from the mismanagement of the Karma's launch and the supply chain (*id.*), compounded by the DoE loan funds drying up. Grant Thornton, an auditor retained by DoE at that time, discovered that Fisker owed $120 million to its suppliers, primarily because Fisker had ordered several hundred million dollars in useless parts. (*Id.*) In early November, the company was on the brink of insolvency, but DoE refused to resume funding under the loan. (*Id.*)

According to Plaintiffs, Defendants not only concealed the cash crisis from outside investors (Compl. ¶ 8), but sought to plug the hole with additional outside investments. (*Id.* ¶ 11.) Kleiner Perkins, and its partners Lane and Doerr, exercised their effective control of Fisker to retain AEI to find outside investors. (*Id.* ¶ 38.) According to the complaint, AEI not only sold preferred stock of Fisker, but also created specialized investment products that allowed smaller-dollar investors to purchase an interest in Fisker, which gave AEI itself a controlling stake in the company: though individual investors owned the shares of AEI's investment vehicles, AEI retained the right to vote the shares. (*Id.* at ¶ 1.) Daubenspeck directed AEI's activities as placement agent for Fisker's securities, and issued false statements in his role as a Fisker board member. (*Id.* ¶¶ 26–28). McDonnell was responsible for AEI's marketing efforts on Fisker securities. (*Id.* ¶ 31.) According to the complaint, all Defendants knew about and failed to disclose Fisker's calamitous financial state, and nevertheless

successfully raised more than $500 million through sales of Fisker's securities between September 2011 and September 2012, when the company was forced to essentially shutter operations. (*Id.* ¶ 11.) It was this act—raising hundreds of millions of dollars in capital while failing to disclose the company's financial status in the offering documents—that Plaintiffs allege subjects the Kleiner Perkins Defendants and the individual AEI Defendants, Daubenspeck and McDonnell, to liability. (*Id.* ¶¶ 10–13.)

This is not the first case arising from Fisker's fallout. In December 2013, a few months after the *qui tam* complaint was unsealed, Fisker investors filed three lawsuits in the United States District Court of Delaware against many of the same defendants here (only Doerr was omitted), alleging claims for securities fraud under the Securities Act of 1933 and the Securities Exchange Act of 1934. (KP Defs.' Mem. in Supp. of Mot. to Dismiss [hereinafter "KP Defs.' Br."] [45], at 3–4.) Those actions were consolidated as *In re Fisker Automotive Holdings, Inc. Shareholder Litigation*, No. 13-cv-2100-SLR. The plaintiffs survived a motion to dismiss, *In re Fisker Auto. Holdings, Inc. S'holder Litig.*, No. Civ. 13-2100-SLR, 2015 WL 6039690 (D. Del. Oct. 15, 2015), and that case remains pending in discovery. In the case in this court, Plaintiffs assert common-law tort claims under Delaware law: negligent misrepresentation, fraud, fraudulent concealment, breach of fiduciary duty, aiding and abetting breach of fiduciary duty (this count against KP, Doerr, and McDonnell only), and civil conspiracy. (*See generally* Compl.) The court does not know to what extent this action is a mirror image of the Delaware case; Defendants have not attempted to stay or consolidate this case with it. *See Cent. States, Se. & Sw. Areas Pension Fund. v. Paramount Liquor Co.*, 203 F.3d 442, 444 (7th Cir. 2000) (discussing "first filed" doctrine).

Instead, the Kleiner Perkins Defendants have moved to dismiss the complaint, arguing that the court lacks personal jurisdiction and that the claims against them are barred by the

5

statute of limitations.[1] Daubenspeck and McDonnell, the AEI partners, joined the statute of limitations argument. (Daubenspeck Mot. to Join KP Def.'s Mot. [47]; McDonnell Mot. to Dismiss [49].) Plaintiffs broadly claim that jurisdiction is appropriate because all Defendants transacted business in the State of Illinois through AEI (Compl. ¶ 15), and that all Defendants committed tortious acts within the State of Illinois by "disseminating and/or causing to be disseminated to Plaintiffs and the Class the materially false and misleading information alleged herein through AEI's headquarters in Illinois." (*Id.* ¶ 16.) The complaint does not allege that these documents were drafted in Illinois, nor that Kleiner Perkins, Doerr or Lane knew that the documents would be distributed to Illinois residents in particular. Instead, the Kleiner Perkins Defendants allegedly knew that their statements would be distributed by AEI through its online portal, the "Venture Gateway," to its investors. (*Id.* ¶ 34.) As to the Kleiner Perkins Defendants particularly, the complaint claims:

- Kleiner Perkins was the controlling shareholder in Fisker since its initial investment in January 2008. (*Id.* ¶ 33.) Through Doerr and Lane, Kleiner Perkins made the decision to have Fisker retain AEI and seek additional investors. (*Id.* ¶ 38.) As the controlling shareholder, the complaint alleges, Kleiner Perkins, through Doerr, drafted and/or approved the offering documents that contained materially false and misleading information that AEI distributed to investors. (*Id.* ¶ 38.)

- Lane, a managing partner of Kleiner Perkins and a member of Fisker's Board of Directors, negotiated with DoE on Fisker's behalf, appeared for Fisker at investor presentations and in press reports, and drafted and/or approved offering documents containing false representations. (*Id.* ¶ 39.) The complaint specifically alleges that he travelled to Illinois to "give presentations and host roadshow events in connection with offerings of Fisker Automative Securities." (*Id.*) Lane, along with Doerr, controlled Fisker's decision to retain AEI as the placement agent for Fisker's securities. (*Id.* ¶ 40.)

- Doerr, a managing partner of Kleiner Perkins, was "intimately involved" in Fisker's management, including the negotiation of the DoE loan both before and

---

[1] The parties appear to agree that the court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act's minimal diversity requirements. 28 U.S.C. § 1332(d)(2)(A). The court is satisfied that at least one plaintiff is diverse from at least one defendant, as several plaintiffs are residents of Illinois (David Nurnidge, Kenneth Steel and Robert Steel), and at least two defendants are California residents (Doerr and Lane). (Defs.' Notice of Removal [1], at ¶ 11.)

after the freeze. (*Id.*) Doerr, along with Lane, controlled Fisker's decision to retain AEI. (*Id.*)

The Kleiner Perkins Defendants object that the complaint alleges primarily that AEI, not they, had contacts with Illinois. (KP Defs.' Br. 12.) The only direct contact that any Kleiner Perkins Defendant had with the state, according to the complaint, is that Lane travelled to Illinois for "roadshow" activities. (*Id.* at 13.) Plaintiffs do not allege that they attended Lane's roadshows, or that they relied on material representations made by him there. (*Id.*) The KP Defendants further argue that even if the court has personal jurisdiction over them, Plaintiffs' common-law claims are barred by the three-year statute of limitations in the Illinois Securities Law ("ISL"), which extends to all claims for which the ISL provides relief. 815 ILCS § 5/13(D).[2] The AEI Defendants, Daubenspeck and McDonnell, join in the second ground for dismissal. For the reasons that follow, the court finds that Plaintiffs have alleged sufficient facts to assert personal jurisdiction over Kleiner Perkins and Lane, but not Doerr, and that Plaintiffs' claims are barred by the ISL statute of limitations.

## **DISCUSSION**

**I.      Personal Jurisdiction**

Plaintiffs must demonstrate that the court has personal jurisdiction over each defendant. *Calder v. Jones*, 465 U.S. 783, 790 (1984). When resolving this question on the briefs, the court resolves factual disputes in favor of jurisdiction. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). Personal jurisdiction exists in two forms: general and specific. *See id.* at 492. Plaintiffs do not argue that the Kleiner Perkins Defendants' contacts with Illinois are sufficient to establish general jurisdiction over them (Pls.' Mem. in Opp to Defs.' Mot. to Dismiss [hereinafter "Pls.' Br."] [62], at 12–15), and the court presumes that such an argument would be

---

[2] The ISL does not expressly preempt these common law claims, but sets the statutory time limit for any claims for which the ISL would provide relief at three years. 815 ILCS § 5/13(D).

7

foreclosed by *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). The court therefore need only consider specific jurisdiction.

Specific jurisdiction in federal court is predicated on the jurisdictional authority of the state in which it sits; here, Illinois. *See N. Grain Mktg.*, 743 F.3d at 491. Illinois permits its courts of general jurisdiction to reach as far as the Constitution of the United States allows, 735 ILCS § 5/2-209(c), merging the constitutional and statutory questions. *See N. Grain Mktg.*, 743 F.3d at 492. By constitutional standards, a court may exercise jurisdiction over a defendant only where the defendant has "certain minimum contacts with [a state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). To establish specific jurisdiction, a plaintiff must demonstrate that a defendant "'purposefully directed' his activities at residents of the forum . . . ." *Burger King Corp. v. Rudzewicz*, 471 U.S. 461, 472 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

"[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him; nor does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary." *Keeton*, 465 U.S. at 781 n.13 (1984). Instead, each defendant's contacts with the forum state must be sufficient to establish jurisdiction. *Id.*; *Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980). If a company directs its activities to the forum state through the systematic and continuous acts of agents, however, minimum contacts are established for litigation arising out of that activity. *Int'l Shoe*, 326 U.S. at 320. The central question is whether the Kleiner Perkins Defendants' contacts with this forum are such that it is foreseeable that they could be haled into court here. *See FMC Corp. v. Varonos*, 892 F.2d 1308, 1313 (7th Cir. 1990) (citing *Burger King*, 471 U.S. at 474).

Merely entering into a contract with a party in the forum is not alone a sufficient contact for jurisdiction, *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913 (7th Cir. 2015), nor is

entering into a conspiracy with a state resident, *Knaus v. Guidry*, 389 Ill. App. 3d 804, 827, 906 N.E.2d 644, 663 (1st Dist. 2009); *Smith v. Jefferson Cty. Bd. of Educ.*, 378 Fed. App'x. 582, 585–86 (7th Cir. 2010). For instance, in *Knaus*, plaintiffs alleged that several defendants engaged in what the plaintiffs described as an "advance fee scheme," in which defendants offered a high-return, short-term investment to plaintiffs and then misappropriated the funds, dispersing them to other defendants, including an Illinois resident. 389 Ill. App. 3d at 809–10, 906 N.E.2d at 649–50. The court concluded that the defendants' transfer of funds into the state with a resident co-conspirator was not a sufficient contact for jurisdiction, *id.* at 819, 906 N.E.2d at 657, and that "plaintiffs [had] not shown that the defendants *purposefully* directed their conduct towards Illinois so as to cause an effect in this state," as the transfer was only incidentally directed towards Illinois. *Id.* at 827, 906 N.E.2d at 663 (emphasis added). Here, too, the fact that the Kleiner Perkins Defendants are accused of entering into a conspiracy with AEI in Illinois is, alone, insufficient for jurisdiction. The court thus must examine whether the Kleiner Perkins Defendants otherwise directed their activities to this state such that an exercise of jurisdiction would be appropriate.

Complicating the jurisdictional question is the fact that Plaintiffs claim not that the Kleiner Perkins Defendants acted directly to commit tortious conduct against them in this state, but instead that the Kleiner Perkins Defendants disseminated false statements through AEI. The Supreme Court has long recognized that the actions of agents can be sufficient to establish minimum contacts on the part of the principal. *Int'l Shoe*, 326 U.S. at 320. The unilateral actions of third parties with whom a defendant is merely associated, however, are not sufficient for jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003). Without more, a third party's choice to perform services in the forum state does not subject a defendant that hired the third party to jurisdiction. *Biltmoor Moving & Storage Co. v. Shell Oil Co.*, 606 F.2d 202, 206 (7th Cir. 1979); *Madison Miracle Prods., LLC v. MGM Distrib. Co.*, 2012 IL App (1st) 112334, ¶¶ 72–73, 978 N.E.2d 654, 674–75. If there is other evidence of

the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" that makes clear that a defendant has purposefully availed itself of the forum, there will be jurisdiction over the defendant. *Philos Techs.*, 802 F.3d at 913 (quoting *Burger King Corp.*, 471 U.S. at 479). A particularly strong example is where the defendant necessarily knows that all of the work under a contract would be performed in the state. *See Biltmoor*, 606 F.2d at 207 (holding that agreement required plaintiff independent contractor's performance in state, subjecting defendant to jurisdiction).

In sum, even where the downstream effect of a defendant's actions within a state are significant, the courts of that state do not have personal jurisdiction unless the defendant purposefully directs his or her activity towards the state's residents. In *Madison Miracle Productions*, the plaintiff, an LLC vehicle for the funding of the film "Madison," sued a California-based movie distribution company in Illinois. 2012 IL App (1st) 112334 at ¶¶ 1–3, 978 N.E.2d at 658. Affirming dismissal for lack of personal jurisdiction, the appellate court noted that the California company's only activity in Illinois was contracting with independent third parties as part of a nationally-directed plan for distribution of the film. *Id.* at ¶ 79, 978 N.E.2d at 676. It was the third parties, not the California-based defendant, who had exhibited the film in theaters, placed advertising in local media outlets, and distributed DVDs of the film in the state. *Id.* at ¶ 80, 978 N.E.2d at 676.[3] The court affirmed dismissal despite the fact that Illinois was "disproportionately targeted" in the film's release, with 25% of the marketing funds and more than 10% of the screens dedicated to the initial exhibition of the film in Illinois. *Id.* at ¶ 78, 978 N.E.2d at 676.

---

[3] The distribution company in *Madison Miracle Productions* did not "reach[] out to Illinois to engage any of these third parties," unlike what Plaintiffs claim the Kleiner Perkins Defendants did here. *Id.* at ¶ 80, 978 N.E.2d at 676. Even if the distribution company had reached out directly to third parties in Illinois, however, it should not have changed the outcome—entering into a contract with a third party in the forum state is not a sufficient contact. *Philos Techs.*, 802 F.3d at 913.

10

Plaintiffs' only allegations against the Kleiner Perkins Defendants are that they retained the Chicago-based AEI to recruit investors, and disseminated the offering documents containing misrepresentations through AEI in Chicago. (Pls.' Br. 12–13.) These actions allegedly resulted in a number of Illinois residents suffering harm, including Plaintiffs. (*Id.*) But, similar to the distribution company in *Madison Miracle*, the Kleiner Perkins Defendants engaged AEI for a campaign that only incidentally reached Illinois residents. There are no allegations in the complaint that the Kleiner Perkins Defendants directed AEI to market Fisker investments to Illinois residents; instead, it was AEI's choices about when, where, and how Kleiner Perkins' goals would be reached that directed those effects towards Illinois.

Plaintiffs cite *uBID, Inc. v. GoDaddy Group, Inc.* for the proposition that a nationwide solicitation that causes harm in a state subjects the defendant to jurisdiction, regardless of whether the defendant intended to target the particular state. 623 F.3d 421, 427–28 (7th Cir. 2010). In *uBid*, reversing dismissal of a case against GoDaddy, Inc., the Seventh Circuit agreed with plaintiff that the company's national advertising campaign was a sufficient contact for specific jurisdiction in Illinois, where the campaign aired. *Id.* This court agrees that if the Kleiner Perkins Defendants had directly marketed investment products to Illinois residents, there would be little question of this court's jurisdiction. But *uBID* does not address the jurisdictional consequences of a solicitation made by an independent contractor that exercises a high degree of control over the conduct of a nationally-directed campaign. It may be unfair to permit a business whose activities harm Illinois residents to "escape from Illinois by interposing a contractual intermediary[,]" *Biltmoor*, 606 F.2d at 207, but where the Kleiner Perkins Defendants made no purposeful or knowing effort to reach Illinois residents in particular, due process protects these Defendants from being haled into court in the state, *see Burger King*, 471 U.S. at 472.

The court is, thus, unwilling to conclude that the solicitation campaign carried out by AEI subjects Kleiner Perkins or its agents to personal jurisdiction in Illinois. But Plaintiffs also claim

11

that other activities bring Lane, and Kleiner Perkins itself, within this court's jurisdiction. The Plaintiffs note (disappointingly, only in a footnote) critical allegations in the complaint concerning Lane: that he "often traveled to Illinois to give presentations and host roadshow events in connection with offerings of Fisker Automotive Securities" (Compl. ¶ 39), and that AEI's placement contract with Fisker required Lane to participate in a one-week "roadshow" to promote Fisker's securities, which expressly included Chicago as a stop. (Compl. ¶ 65.)[4]

Neither party provides authority that would help the court assess the weight of Lane's "roadshow" activities in a minimum contacts analysis. The court is nevertheless satisfied that Lane, acting as an agent for Kleiner Perkins, purposefully directed activities to this state in marketing Fisker securities in an in-person presentation—even if this sales pitch was nationally directed, Lane personally availed himself of the forum by making sales presentations in Illinois. *Cf. uBID*, 623 F.3d at 427–28. Courts of this district have held that even one visit can be a sufficient contact where the cause of action arises out of the same activity, *see Olson v. Jenkens & Gilchrist*, 461 F. Supp. 2d 710, 724 (N.D. Ill. 2006); *see also Vandeveld v. Christoph*, 877 F. Supp. 1160, 1165 (N.D. Ill. 1995); *Hyatt Int'l Corp. v. Inversiones Los Jabillos, C.A.*, 558 F. Supp. 932, 934–35 (N.D. Ill. 1982), and Lane's presentations sufficiently establish jurisdiction for this litigation arising out of the sale of Fisker's securities, as allegedly engineered by Kleiner Perkins.

---

[4] Plaintiffs also claim, in their brief, that Doerr "visited AEI's offices in Illinois in furtherance of Kleiner Perkins' illicit relationship with AEI . . ." but the cited portions of the complaint do not contain those factual allegations. (*See* Pls.' Br. 14 n.20 (citing Compl. ¶¶ 39–40, 65)).

The Kleiner Perkins Defendants' sole substantive response to this argument[5] is that Plaintiffs did not allege that they attended the roadshow or were influenced by Lane's presence in the state, but Defendants do not produce authority to demonstrate that minimum contacts analysis is so circumscribed. The court sees this differently: jurisdiction attaches when a defendant purposefully avails herself of the state's protections by taking an action there, making it foreseeable that she would be haled into court in the state; the particular plaintiff need not have suffered from the exact same action that created a minimum contact for jurisdiction, as long as the injury arises out of the same course of activity. For instance, in *uBID*, the court found that GoDaddy's advertising and sales in Illinois were sufficient minimum contacts for uBID's suit alleging that GoDaddy misdirected users from uBID's website by selling closely-related web URLs. 623 F.3d at 430–32. Whether the advertising in Illinois caused an Illinois customer to register the offending domain name was immaterial. *Id.* at 431. Similarly, in an older case, *Giotis v. Apollo of the Ozarks, Inc.*, the Seventh Circuit reversed a trial court's dismissal for lack of personal jurisdiction, finding that a fireworks distributor was subject to specific jurisdiction in Wisconsin for injuries caused by fireworks, though the plaintiff purchased the fireworks in Minnesota and transported them to Wisconsin, because the distributor purposefully directed its sales efforts to both states and the "injury occurred within the scope of the sales efforts . . . ." 800 F.2d 660, 668 (7th Cir. 1986).[6]

Finally, the Illinois fiduciary shield doctrine is no barrier to jurisdiction over Lane. That doctrine protects employees from being sued in a state based on conduct within that jurisdiction

---

[5] The Kleiner Perkins Defendants also contend that there are no allegations that the presentations or events "actually took place." (*See* KP Defs.' Br. 13.) Plaintiffs could have been more specific about the dates and content of these presentations, but there is little ambiguity in the allegation that Lane "often traveled to Illinois to give presentations and host roadshow events in connection with offerings of Fisker Automotive Securities." (Compl. ¶ 39.) Defendants were free, on a Rule 12(b)(2) motion, to produce additional evidence or request an evidentiary hearing to dispute that these presentations occurred, but have not done so.

[6] Both of these opinions predate the Supreme Court's decision in *Daimler AG v. Bauman*, which significantly clarified the doctrine of general personal jurisdiction. *See* 134 S. Ct. 746 (2014). *Daimler* did not affect this aspect of specific personal jurisdiction.

that is solely at their employers' bidding. *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 550 (7th Cir. 2001) (citing *Rollins v. Ellwood*, 141 Ill.2d 244, 278, 565 N.E.2d 1302, 1314 (1990)). Plaintiffs contend that the fiduciary shield doctrine does not apply because Lane is a principal of Kleiner Perkins. The purpose of the doctrine is to protect against unfairness to an employee who has no control over where he or she goes; a firm's principal enjoys more discretion. *See My Canary LLC v. Susieair, LLC,* No. 16 CV 4000, 2017 WL 622235, at *3 (N.D. Ill. Feb. 15, 2017). Several courts of this district have found that the doctrine does not protect a defendant who has decision-making authority and a financial stake in the company that directed him or her to a jurisdiction. *Id., see also Consumer Benefit Servs., Inc. v. Encore Mktg. Int'l, Inc.*, No. 01 C 6985, 2002 WL 31427021, at *3 (N.D. Ill. Oct. 30, 2002) (collecting cases). Plaintiffs' allegations strongly support the theory that Lane engineered his own presence in the state: he is a principal of Kleiner Perkins, and, together, he and Doerr devised the strategy to procure outside funding and retained AEI to accomplish that goal. His presence in the state to further his own strategy properly renders him subject to the court's jurisdiction here.

Accordingly, the court has jurisdiction over Lane. Plaintiffs go a step further; they contend that Lane was Kleiner Perkins' agent and that his actions subjected both him and the entity to jurisdiction. (Pls.' Br. 14 n.20.) They offer no analysis in support of this contention, however and Defendants, for their part, do not respond to it. (Reply in Supp. of KP Defs.' Mot. to Dismiss [64], at 13.) Kleiner Perkins is described in the complaint as a "venture capital firm" and Lane as its "managing partner." (Compl. ¶¶ 33.) The court is satisfied that, regardless of the exact type of entity that Kleiner Perkins is, Lane's actions can be attributed to it as his principal. *Bogenberger v. Pi Kappa Alpha Corp.*, 2016 IL App (1st) 150128, ¶ 40, 56 N.E.3d 1, 17 (corporate officers bind corporation as agents when acting within the scope of their authority); *In re Estate of Divine*, 263 Ill. App. 3d 799, 807, 635 N.E.2d 581, 587 (1st Dist. 1994) (actions by one partner are imputed to another). Without further analysis from the Plaintiff, the

14

court cannot conclude that Lane's conduct supports jurisdiction over Doerr,[7] and he is dismissed as a defendant without prejudice.

## II.     Statute of Limitations

Plaintiffs allege several state law claims under Delaware law,[8] but the Defendants urge that the three-year statute of limitations of the Illinois Securities Law ("ISL") applies. The Illinois Securities Law ("ISL") provides, among other rights, a private right of action against defendants who mislead investors in the sale of securities. 815 ILCS § 5/12(I). The ISL's three-year statute of limitations applies not only to claims brought under the ISL, but also to "any of the matters for which relief is granted by this Section[.]" 815 ILCS § 5/13(D); *see Klein v. George G. Kerasotes Corp.*, 500 F.3d 669, 671 (7th Cir. 2007) (holding that fraud and breach of fiduciary duty claims fall under ISL); *see also Tregenza v. Lehman Bros.*, 287 Ill. App. 3d 108, 109, 678 N.E.2d 14, 15 (1st Dist. 1997) (negligent misrepresentation claims fall under ISL).[9] Plaintiffs believe, however, the choice-of-law clauses in the stock purchase agreements they signed bar them from bringing claims under Illinois law. Therefore, Plaintiffs contend, they could not have brought a claim under the ISL and are confined to the Delaware common law claims that they make here, which are governed by a five-year statute of limitations. 735 ILCS § 5/13-205.[10] In the alternative, Plaintiffs claim that there is an issue of fact regarding when Plaintiffs became aware of their claims, and thus, when the statute of limitations began to run. The court will address each argument in turn.

---

[7]     Whether Doerr's status as a partner of Kleiner Perkins makes a difference has not been the subject of briefing.

[8]     Plaintiffs do not allege a breach of any federal securities law in this complaint. Federal securities law is evidently at issue in the Delaware consolidated case. The parties have not commented on why the Delaware common law claims were not filed in the Delaware case as well. Regardless, the court has subject matter jurisdiction over Plaintiffs' state law claims, as noted above, under the Class Action Fairness Act. *See supra* n.1; 28 U.S.C. § 1332(d)(2)(A).

[9]     Plaintiffs implicitly concede this point. (Pls.' Br. 6–12 (assuming that ISL statute of limitations would apply to any Illinois common law claims)).

[10]     Though Plaintiffs bring their claims under Delaware law, the court applies Illinois' statute of limitations to the action. *Newell Co. v. Petersen*, 325 Ill. App. 3d 661, 668–69, 758 N.E.2d 903, 908 (2d Dist. 2001) (statutes of limitations are "procedural in nature").

### A. The ISL Statute of Limitations Applies

Plaintiffs argue that their claims arise from, and are dependent on, the stock purchase agreements and the subscription agreements that they made to purchase Fisker securities through AEI. (Pls.' Br. 7–8.) These agreements all contained a choice-of-law clause selecting Delaware law. (*E.g.*, Fisker Holdings, Inc. Series B-1 Preferred Stock Purchase Agreement, Nov. 5, 2010, Ex. B to Decl. of Kurt B. Olsen [63-1], at 21; Advanced Equities Fisker Mgmt. Corp. Formation Agreement, Jun. 29, 2011, Ex. D to Olsen Decl. [60-4], at 16.) Because the various purchase agreements all contain Delaware choice-of-law provisions, Plaintiffs contend, they cannot seek recovery under the Illinois statute.

This argument—that the ISL statute of limitations has no force here—assumes that if the Plaintiffs had brought a timely ISL claim, the Kleiner Perkins Defendants would have asserted the choice-of-law clause to dismiss it. The argument assumes, as well, that a judge would have found that the Kleiner Perkins Defendants had standing to assert the choice-of-law clauses in agreements to which they are not a party, and that the choice-of-law clauses encompassed Plaintiffs' claims. But the Kleiner Perkins Defendants are not required to assert the choice-of-law clause, and might well have elected not to raise it. *See Flextronics Int'l USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd.*, 186 F. Supp. 3d 852, 862 (N.D. Ill 2016) (citing *Fid. & Deposit Co. of Md. v. Krebs Eng'rs*, 859 F.2d 501, 504 (7th Cir. 1988)) (parties may waive choice-of-law clauses in contracts). Even if the Kleiner Perkins Defendants could have attempted to enforce the choice-of-law provision, it is not obviously relevant here; Plaintiffs cannot assert a defense on behalf of an opponent that has not asserted it. Indeed, the court itself ordinarily will not raise a defense *sua sponte* unless "the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous." *Cf. Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 763 (7th Cir. 2016). If the Plaintiffs had brought a timely ISL claim, of course, the choice-of-law clauses would have been no obstacle to relief even if the Kleiner Perkins Defendants had successfully invoked them—the Plaintiffs could

16

simply have filed the Delaware claims. Instead, Plaintiffs waited too long and now rely on this conjectural, procedurally inverted route to a timely claim. Plaintiffs were not barred from bringing a timely ISL claim, and, therefore, the ISL statute of limitations applies.

The court is uncertain why Plaintiffs have not attempted the more straightforward route: simply invoking the Delaware choice-of-law clauses in the agreements themselves. If they wish to do so, Plaintiffs are granted leave to amend the complaint within 21 days to plead facts that would support the inference that the Kleiner Perkins Defendants are bound by the choice-of-law clauses in the agreements.

### B. The Statute of Limitations Has Expired

With respect to Plaintiffs' pending claims, Defendants argue that the statute of limitations began to run, at the latest, on April 17, 2013 when the PrivCo Report was released. (KP Defs.' Br. 8.) Public congressional hearings regarding the DoE loans began on April 24, 2013. (Compl. ¶ 3.) On September 17, 2013, Fisker's former CFO's *qui tam* complaint was unsealed. (*Id.* ¶ 5.) This action was filed on October 14, 2016. (*See generally id.*)

The ISL statute of limitations begins to run at the earlier of:

(1) the date upon which the party bringing the action has actual knowledge of the alleged violation of this Act; or

(2) the date upon which the party bringing the action has notice of facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation of this Act.

815 ILCS § 5/13(D). The ISL contains no statute of repose, which would preclude recovery regardless of when a plaintiff discovered a claim, *Cal. Public Emps. Ret. Sys. v. ANZ Secs., Inc.*, 137 S. Ct. 2042, 2049 (2017), as the legislature eliminated the statute of repose in 2013, Act effective Aug. 5, 2013, 2013 Ill. Legis. Serv. P.A. 98-174 (H.B. 2969).

A statute of limitations is an affirmative defense. FED. R. CIV. P. 8(c)(1). Thus, a motion to dismiss a case for a statute of limitations violation must be treated as a motion for judgment on the pleadings under Rule 12(c). *See Richards v. Mitcheff*, 696 F.3d 635, 637–38 (7th Cir.

2012); see also *Johnson v. City of S. Bend*, No. 15-3887, --- Fed. App'x ----, 2017 WL 690756, at *3 (7th Cir. Feb. 21, 2017). Plaintiffs claim that there is a dispute of fact about when they had knowledge of their claims, or notice of sufficient facts that would support their claims: counsel's "characterizations of disclosures in a complaint" do not start the limitations period, Plaintiffs argue, and Defendants have not carried their burden to show that Plaintiffs had sufficient knowledge.

The court disagrees. Parties are bound by admissions and allegations in their pleadings. *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735–36 (7th Cir. 2002). Plaintiffs' complaint establishes that Plaintiffs had knowledge of their claims in April 2013, or at least some time before October 14, 2013 (three years before filing this case). Though Plaintiffs do not expressly admit that they had knowledge of the PrivCo report, the congressional hearings, or the *qui tam* complaint, they explain in the complaint that these well-publicized incidents "revealed fraud and breach of fiduciary duties." (*See* Compl. ¶ 4.) It is therefore implausible that this six-month episode, the opening act of the "largest venture[-]capital-backed debacle in U.S. history," as Plaintiffs describe it, did not put the Plaintiffs on notice that Fisker investors had been seriously misled.

Plaintiffs rely on this court's 2007 opinion in *In re Motorola Securities Litigation* for the proposition that "characterizations" of public information in a complaint do not necessarily stand as judicial admissions that the plaintiffs were on notice of that information. 505 F. Supp. 2d 501, 529–30 (N.D. Ill. 2007) (plaintiff described public disclosures by Motorola as "shocking" and "surprising" news). While that remains true, the admissions at issue here are straightforward factual disclosures, not characterizations:

> The investigations by PrivCo and Congress revealed fraud and breach of fiduciary duties by, among others, AEI's co-founder and principal, Keith Daubenspeck ("Daubenspeck"), and its senior managing director, Peter McDonnell ("McDonnell"), in close association with the venture capital firm Kleiner Perkins Caufield & Byers ("Kleiner Perkins") and Kleiner Perkins' managing partners Ray Lane ("Lane") and John Doerr ("Doerr") in connection with Defendants' scheme to induce Plaintiffs and the Class to purchase Fisker Automotive Securities while concealing from them material adverse information.

18

(Compl. ¶ 4.) In *Motorola*, the court's discussion focused on what the plaintiffs would have known at the time that the disclosures were being made, not the plaintiffs' post-hoc characterizations of that news as "shocking." 505 F. Supp. 2d at 529–30. Here, the factual allegations set forth in the complaint—that the PrivCo report and congressional hearings revealed the claims—demonstrate that plaintiffs must at a minimum have known facts that, in the exercise of reasonable diligence, would have led to actual knowledge. Though the complaint does not explicitly state that Plaintiffs learned of their claims on any particular date, Plaintiffs candidly laid out the method by which the world learned of them. The court is satisfied that the Plaintiffs did as well. Accordingly, the motion to dismiss is granted.

Plaintiffs are granted leave to amend their complaint within 21 days, however, if they wish to expressly contradict the court's conclusion about the dates that they learned of the facts that would lead them to their claims. *188 LLC*, 300 F.3d at 735–36 (allegations in superseded pleadings do not constitute judicial admissions). If the Plaintiffs seek to amend their complaint, they are directed to describe the relationship between this case and the Delaware action. *In re Fisker Automotive Holdings, Inc. Shareholder Litigation*, No. 13-cv-2100-SLR.

## CONCLUSION

For the foregoing reasons, the Kleiner Perkins Defendants' motion to dismiss [44], in which Daubenspeck has joined, is granted. McDonnell's motion to dismiss which incorporates that motion [49] is also granted. The complaint is dismissed. Plaintiffs have leave to file an amended complaint, if any, within 21 days.

ENTER:

Dated: July 20, 2017

_____
REBECCA R. PALLMEYER
United States District Judge