UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ORGONE CAPITAL III, LLC, DAVID BURNIDGE, LINCOLNSHIRE FISKER, LLC, KENNETH A. STEEL, JR., and ROBERT F. STEEL, individually and on behalf of a class of all those similarly situated, | ) ) ) ) ) ) | |
|---|---|---|
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 16 C 10849 |
| KEITH DAUBENSPECK, PETER McDONNELL, KLEINER PERKINS CAUFIELD & BYERS, RAY LANE, and JOHN DOERR, | ) ) ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The Plaintiffs in this case were investors in the now-defunct electric car manufacturer Fisker Automotive Holdings, Inc. Fisker, once the darling of venture capital firms and the U.S. Department of Energy, managed to manufacture and sell its cars for less than a year before shutting down operations in August 2012. (Amended Class Action Complaint [82] ("Am. Compl."), ¶ 7.) After failing to find a buyer, Fisker filed for bankruptcy in the District of Delaware on November 22, 2013. (Id.) An explosion of litigation in courts around the country followed.

The named Plaintiffs, all Illinois residents or Delaware companies domiciled in Illinois, launched this suit on behalf of a putative class of investors who purchased Fisker securities through Advanced Equities Inc. ("AEI"), an Illinois-based investment firm, between 2009 and 2012. (Id. at ¶¶ 1, 14.) The Plaintiffs claim that Fisker's controlling shareholder, Kleiner Perkins Caufield & Byers ("Kleiner Perkins" or "KP"), a California venture capital firm, committed securities fraud by misleading prospective investors in order to save its investment—and its reputation—with infusions of outside cash. Plaintiffs allege that Kleiner Perkins and its managing partners, Ray Lane and John Doerr (together, the "KP Defendants"), exercised

control of Fisker's board of directors to retain AEI to market Fisker's stock. Plaintiffs allege that the KP Defendants, through AEI and its principal officers, Defendants Keith Daubenspeck and Peter McDonnell, raised over $800 million by issuing misleading information regarding Fisker's financial health and production capabilities, and concealing the fact that the federal government froze Fisker's access to a valuable loan from the Department of Energy.

This is the second time the court addresses motions to dismiss by the Defendants. It will also be the last. This court granted the Defendants' first Motions to Dismiss [44, 49] without prejudice on the basis that the Plaintiff's original Class Action Complaint [1-1] was barred by the three-year statute of limitations in the Illinois Securities Law ("ISL"), *see* 815 ILCS 5/1 *et seq*. *See Orgone Capital III, LLC v. Daubenspeck*, No. 16-CV-10849, 2017 WL 3087730, at *1 (N.D. Ill. July 20, 2017). The Plaintiffs filed an Amended Class Action Complaint [82] on August 10, 2017, and the Defendants again filed motions to dismiss the amended complaint and for judgment on the pleadings. For the reasons stated below, the Defendants' Motions [85, 90] are granted and this case is dismissed with prejudice.

## **BACKGROUND**

Aside from a few key factual allegations, the Plaintiffs' Amended Complaint is virtually identical to their original complaint. The Plaintiffs allege that the Defendants made numerous misstatements and omissions of fact in connection with six stock offerings facilitated by AEI between August 2009 and September 2012. (Am. Compl. at ¶¶ 51–52.) These misstatements regarded, among other things: the production status of Fisker's proposed luxury sports car, the Karma; the company's compliance with the terms of the loan from the Department of Energy ("DOE") loan and that loan's eventual suspension; and Fisker's "operating results, financial results, financial condition, and controls." (*Id.*) In both complaints, the Plaintiffs assert six common law causes of action against the Defendants for their efforts to market Fisker securities to investors: "fraud, fraudulent concealment of material information, breach of fiduciary duty,

aiding and abetting breach of fiduciary duty, negligent misrepresentation, and civil conspiracy." (Class Action Complaint [1-1] ("Compl."), ¶¶ 1, 174–269; Am. Compl. ¶¶ 1, 235–322.)

The court adopts its summary of the Plaintiffs' factual allegations from its first opinion in this case, *Orgone Capital III, LLC v. Daubenspeck*, No. 16-CV-10849, 2017 WL 3087730, at *1–*3 (N.D. Ill. July 20, 2017) ("*Orgone I*"), but in the interests of clarity, will restate the facts relevant to this opinion. The Plaintiffs' first complaint contained numerous references to public hearings on Fisker's financial health and to other lawsuits filed by different aggrieved investors prior to this one. (Compl. ¶¶ 3–12, 165–70, 183–86, 204–08, 224–30, 242–46.) For example, on April 17, 2013, a private research firm called PrivCo published a detailed report (the "PrivCo Report") entitled "Fisker Automotive's Road to Ruin: How a Billion-Dollar Startup Became a Billion-Dollar Disaster," in which it exposed Fisker's financial predicament. (*Id.* at ¶ 3.) The PrivCo Report relied on "over 11,000 pages of original never-before published documents obtained through multiple Freedom of Information Act requests" and which included formerly-confidential DOE documents. (*Id.*) Starting the following week, Congress held several public hearings to investigate Fisker's misuse of the taxpayer-backed loan it had been given by the DOE. (*Id.*) According to the Plaintiffs, the PrivCo Report, confidential documents, and related hearings "revealed fraud and breach of fiduciary duty by [the Defendants] in connection with Defendants' scheme to induce Plaintiff and the Class to purchase Fisker Automotive Securities while concealing from them material adverse information." (*Id.* at ¶ 4.) The Congressional Hearings also revealed that the DOE had suspended its loan to Fisker two years earlier— something Fisker's later investors had not been made aware of. (*Id.* at ¶ 11.) Finally, the PrivCo Report spelled out the dire stakes for Fisker's investors in clear language: "1,200+ investors . . . will soon find their investments wiped out as Fisker Automotive, Kleiner Perkins partner Ray Lane, and Government Agencies kept Fisker's troubles secret while Fisker raised even more money from new individual investors . . . at the urging of Advanced Equities Inc." (*Id.* at ¶ 11.)

Five months after the PrivCo Report issued, on September 17, 2013, the District Court for the Southern District of New York unsealed a *qui tam* complaint filed against Fisker by its former Chief Financial Officer, Eric Weidner (the "Weidner Complaint"). (*Id.* at ¶ 5.) The Weidner Complaint revealed that Fisker had knowingly understated the cost of mass-producing the Karma in its representations to the DOE in order to secure the DOE's backing in 2010. (*Id.*) The Plaintiffs in this case allege that the presence of the DOE loan served as a direct inducement for AEI's customers to invest in Fisker. (*Id.*)

The Plaintiffs in this case originally filed suit in Illinois state court on October 14, 2016. Defendants timely removed the case to federal court pursuant to the Class Action Fairness Act of 2005, *codified at* 28 U.S.C. § 1332(d). (Notice of Removal [1].) The KP Defendants moved to dismiss the Complaint for lack of personal jurisdiction and because the statute of limitations for Plaintiffs' claims had run. (Memorandum of Law in Support of the KP Defendants' Motion to Dismiss [45] ("First KP Defs.' MTD"), 1.) AEI's principals Daubenspeck and McDonnell each joined the KP Defendants' motion with respect to the statute of limitations theory. (Motion by Keith Daubenspeck to join the First KP Defs.' MTD [47], 1–3; Defendant Peter McDonnell's Motion to Dismiss [49].)

This court found the exercise of personal jurisdiction proper over all of the KP Defendants apart from John Doerr. *Orgone I*, 2017 WL 3087730 at *7. Although the court was satisfied that it had personal jurisdiction over Kleiner Perkins and its managing partner Ray Lane (who also served on Fisker's board of directors) based on Lane's "roadshow" sales presentations within the State of Illinois, the court found that the Plaintiffs failed to allege facts sufficient to extend that conclusion to Lane's co-partner, Doerr. *Id.* at *6–*7.

The Defendants' primary ground for dismissal concerned the expiry of the Illinois Securities Law's three-year statute of limitations. The ISL creates a private right of action against defendants who, among other things, commit fraud in connection with the sale of securities. 815 ILCS 5/12(I). The ISL coexists with traditional common law fraud actions. The

4

Plaintiffs believed at the time they initiated this lawsuit, as they do now, that the parties are bound by the Delaware choice-of-law provisions in the stock purchase agreements and subscription agreements by which Plaintiffs purchased Fisker stock through AEI. (Plaintiffs' Memorandum in Opposition to First KP Defs.' MTD [59] ("First Pls.' Resp. Br."), 1, 6–10); (Plaintiffs' Memorandum in Opposition to Second KP Defs.' MTD [97] ("Second Pls.' Resp. Br."), 1, 10–16.) Based on this belief, the Plaintiff asserted that the ISL's statute of limitations does not apply, and that the court should instead apply Illinois' residual five-year statute of limitations, 735 ILCS 5/13-205—making their claims timely. (*Id.*) Plaintiffs' original complaint did not actually allege that the Delaware choice-of-law provisions applied, however; instead, Plaintiffs raised it as a hypothetical:

> This argument—that the ISL statute of limitations has no force here—assumes that if the Plaintiffs had brought a timely ISL claim, the Kleiner Perkins Defendants would have asserted the choice-of-law clause to dismiss it. The argument assumes, as well, that a judge would have found that the Kleiner Perkins Defendants had standing to assert the choice-of-law clauses in agreements to which they are not a party, and that the choice-of-law clauses encompassed Plaintiffs' claims. But the Kleiner Perkins Defendants are not required to assert the choice-of-law clause, and might well have elected not to raise it. [citations omitted.] Even if the Kleiner Perkins Defendants could have attempted to enforce the choice-of-law provision, it is not obviously relevant here; Plaintiffs cannot assert a defense on behalf of an opponent that has not asserted it. . . . Instead, Plaintiffs waited too long and now rely on this conjectural, procedurally inverted route to a timely claim. Plaintiffs were not barred from bringing a timely ISL claim, and, therefore, the ISL statute of limitations applies.

*Orgone I*, 2017 WL 3087730 at *8. Despite concluding that the parties had not invoked Delaware law, the court granted Plaintiffs leave to amend their complaint and "attempt[ ] the more straightforward route" of invoking the Delaware choice-of-law clauses themselves and pleading facts showing that the Defendants were bound by them. *Id.* at *9.

Having found that the three-year statute of limitations applied, the court turned to the question of whether the Plaintiffs were on notice of the Defendants' behavior and Fisker's financial condition such that the statute of limitations started to run before October 14, 2013 (i.e., three years before the Plaintiff filed the suit in Illinois state court). Based on the PrivCo

5

Report, the congressional hearings, and the Weidner Complaint referenced in the Plaintiffs' own complaint, the court found that it had:

> Plaintiffs' complaint establishes that Plaintiffs had knowledge of their claims in April 2013, or at least some time before October 14, 2013 (three years before filing this case). Though Plaintiffs do not expressly admit that they had knowledge of the PrivCo report, the congressional hearings, or the *qui tam* [Weidner] complaint, they explain in the complaint that these well-publicized incidents "revealed fraud and breach of fiduciary duties." (See Compl. ¶ 4.) It is therefore implausible that this six-month episode, the opening act of the "largest venture[-]capital-backed debacle in U.S. history," as Plaintiffs describe it, did not put the Plaintiffs on notice that Fisker investors had been seriously misled.

*Orgone I*, 2017 WL 3087730 at *8. The court also rejected the Plaintiffs' argument that the Defendants' "characterizations of disclosures in a complaint" were not sufficient to start the limitations period:

> [T]he admissions at issue here are straightforward factual disclosures, not characterizations[.]
>
> . . .
>
> Here, the factual allegations set forth in the complaint—that the PrivCo report and congressional hearings revealed the claims—demonstrate that plaintiffs must at a minimum have known facts that, in the exercise of reasonable diligence, would have led to actual knowledge. Though the complaint does not explicitly state that Plaintiffs learned of their claims on any particular date, Plaintiffs candidly laid out the method by which the world learned of them. The court is satisfied that the Plaintiffs did as well.

*Id.* at *9–*10. The court then granted the Plaintiffs leave to amend their complaint if they could defeat the court's conclusion regarding the dates when Plaintiffs learned of the factual basis of their claims. *Id.* at *10. The court noted that allegations in superseded pleadings do not constitute strict "judicial admissions." *Id.* (citing *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735–36 (7th Cir. 2002)).

As stated, the Plaintiffs' Amended Complaint is largely identical to their original complaint. Following the court's directive in *Orgone I*, the Plaintiffs supplemented their original complaint with additional factual allegations as to whether Defendant John Doerr purposefully

6

directed his activities at Illinois residents (*see* Am. Compl. ¶¶ 17–18, 20, 43–45), as well as the Delaware choice-of-law provisions from their investment agreements. (*See id.* at ¶¶ 55–58.)

The Amended Complaint's primary difference, however, is in the Plaintiffs' factual allegations concerning the PrivCo Report, congressional hearings, and the Weidner Complaint. Simply put, they were eliminated. The Amended Complaint contains no references to the April 2013 PrivCo Report and congressional hearings. The Amended Complaint does continue to reference the Weidner Complaint that was unsealed on September 17, 2013; however, the Amended Complaint states that the Plaintiffs were not aware of it until after December 3, 2013, when it was disclosed as a "claim" in Fisker's ongoing bankruptcy proceeding in Delaware. (*Id.* at ¶ 8.)

For the first time, the Plaintiffs also draw the court's attention to an additional action against Fisker, *Atlas Capital Management, L.P. v. Henrik Fisker, et al*, No. 13-CV-2100, brought in the District of Delaware. (Id. at ¶ 9.) The Atlas Complaint, filed by an investor on December 27, 2013, likewise alleges securities fraud against the KP Defendants (and several of Fisker's non-KP officers), but seeks remedies under federal securities law. (*Id.* at ¶ 9–10.) Several other former investors filed identical securities fraud cases shortly thereafter, which Delaware District Court consolidated with the *Atlas* case.[1] (*Id.* at ¶ 11.) The Plaintiffs assert that "the Atlas Complaint was, at the time it was filed, the only action brought by any investor relating to the misleading statements and or omissions alleged therein in connection with the purchase of Fisker Automotive Securities." (*Id.* at ¶ 10.) The subsequent press coverage and references to the Atlas Complaint in Fisker's bankruptcy proceeding led additional investors (presumably, though not explicitly, including the Plaintiffs) "to become aware, for the first time, of potential wrongdoing." (*Id.* at ¶ 11.)

---

[1] The plaintiffs in the *Atlas* case amended their complaint on May 16, 2016, to assert Delaware common law fraud claims against Fisker and the KP Defendants. (Am. Compl. ¶ 13.)

7

The Defendants have again moved to dismiss the Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(2), (b)(6), and (c), identifying the same infirmities that caused the court to dismiss the first complaint. (*See* Memorandum of Law in Support of the KP Defendants' Motion to Dismiss and for Judgment on the Pleadings [86] ("Second KP Defs.' MTD"), 1.) Defendants Keith Daubenspeck and Peter McDonnell again join the KP Defendants' motion with respect to the statute of limitations defense. (Defendant Keith Daubenspeck's Motion to Join the Second KP Defs.' MTD [88], 1; Defendant Peter McDonnell's Motion to Dismiss [90].) Additionally, McDonnell asserts the unique defense that he is not personally bound by the Delaware choice-of-law clauses in the Plaintiffs' investment agreements. (Defendant Peter McDonnell's Reply Memorandum in Support of his Motion to Dismiss the Plaintiffs' Amended Complaint [101], 2–3.)

## DISCUSSION

**1.    The ISL's Statute of Limitations Applies**

Presiding over actions in diversity, the court applies the statute of limitations of the forum state. *Klein v. George G. Kerasotes Corp.*, 500 F.3d. 669, 671 (7th Cir. 2007) (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751–52 (1980)). The ISL's three-year limitations period applies to all actions "brought for relief under this Section or upon or because of any of the matters for which relief is granted by this Section." 815 ILCS 5/13(D). Illinois also has a residual five-year statute of limitations for "all civil actions not otherwise provided for." 735 ILCS 5/13-205.

In order to prevail on their argument for Illinois' residual five-year statute of limitations, the Plaintiffs must establish that the parties are bound by the Delaware choice-of-law clauses in the various investment agreements and, as a result, that the court is barred from applying the ISL's shorter statute of limitations. The court's previous opinion may have created the impression that it mattered whether the Plaintiffs advanced under Delaware common law or Illinois common law for the purposes of applying the Illinois Securities Law's statute of limitation.

8

It does not. The parties argue at length over the applicability of the choice-of-law clauses, including over whether certain defendants were party to the contracts and whether other contractual provisions exculpate the defendants. (*See* Second KP Defs.' MTD 8–10; Second Pls.' Resp. Br. 10–14.) This dispute, however, is irrelevant. Even assuming that Delaware common law does apply in this case, the ISL's three-year statute of limitations still controls.

Under the plain language of the statute, the ISL's statute of limitations does not apply solely to actions seeking relief under the ISL: it applies to "any of the matters for which relief is granted by this Section[.]" 815 ILCS 5/13(D). The Illinois Appellate Court has explicitly held that this includes common law claims arising from the purchase of securities. *Tregenza v. Lehman Bros., Inc.*, 287 Ill. App. 3d 108, 110, 678 N.E.2d 14, 15 (1st Dist. 1997). The Seventh Circuit later adopted the Illinois Appellate Court's reasoning in holding that the ISL's statute of limitations covers sellers of securities as well as buyers, because even if the statutory language did not explicitly reach sellers, a common law claim by those sellers in connection with a securities transaction nevertheless falls within "any of the matters for which relief is granted by [the ISL]." *Klein*, 500 F.3d at 671–674 (discussing *Tregenza* and stating that "common law causes of action for breach of fiduciary duty, fraud, and negligent misrepresentation, when brought by a stock purchaser, fall within the statute of limitations provided by the Securities Law"). As this court noted in *Orgone I*, the Plaintiffs implicitly concede that the ISL's statute of limitations applies to claims brought under Illinois common law. *Orgone I*, 2017 WL 2017 WL 3087730 at *8 n.9 (citing First Pls.' Resp. Br. 6–12). There is no reason to think that identical claims brought under the common law of a different state would fare differently. In fact, a district court in the Central District of California already addressed this exact question. *See Allstate Ins. Co. v. Countrywide Financial Corp.*, 824 F. Supp. 2d 1164, 1176 (C.D. Cal. 2011). Interpreting the ISL, the California district judge explicitly rejected the plaintiff's "tortured and recursive reasoning" that because New York substantive law governed the dispute, an action under the

ISL would be "barred" and therefore the residual five-year limitations should apply.[2] *Id.* Instead, the court endorsed the "more logical reading" offered by the Illinois Appellate Court: "[the ISL's] three-year statute of limitations applies when the conduct giving rise to the fraud claim is conduct that is also covered by the ISL." *Id.* (citing *Tregenza*, 287 Ill. App. 3d at 110, 678 N.E.2d at 15).

The Plaintiffs argue that this view is incorrect, and that the ISL's limitations period "applies only when the ISL 'itself' provides a remedy to a plaintiff." (Second Pls.' Resp. Br. 15.) In support of their position, the Plaintiffs cite *Carpenter v. Exelon Enterprises Co.*, 399 Ill. App. 3d 330, 927 N.E.2d 768 (1st Dist. 2010), which distinguishes the Seventh Circuit's opinion in *Klein v. George G. Kerasotes Corp.*, 500 F.3d. 669 (7th Cir. 2007), and states that the ISL's statute of limitations does not cover "common law damages claims for breach of fiduciary duty brought by sellers of securities." *Carpenter*, 399 Ill. App. 3d at 341, 927 N.E.2d at 777. To the extent these decisions conflict, however, it is irrelevant to the Plaintiffs' case: the Plaintiffs are indisputably *purchasers* of securities, not sellers, and the ISL's statute of limitations therefore applies. The Plaintiffs also cite *Wert v. Cohn*, No. 12-CV-219, 2017 WL 3838098 (N.D. Ill. Sept. 1, 2017), to support their argument, but *Wert* is even less helpful. The plaintiff's claims in that case did not arise out of the sale of securities. 2017 WL 3838098 at *11. Rather, the judge noted that the case instead involved misrepresentations that allegedly persuaded the plaintiffs to *retain* their stock. *Id.* None of the cases cited by the Plaintiff contradict the Defendants' core assertion that the ISL's statute of limitations governs common law actions falling "within the category of matters encompassed by the ISL." (Reply in Support of the Second KP Defs.' MTD [100] ("Second KP Defs.' Reply Br."), 15.)

---

[2] The California judge in *Allstate* was forced to apply an Illinois statute of limitations due to New York's borrowing statute, which requires nonresident plaintiffs suing under New York law based on actions that occurred outside of New York to meet the statute of limitations of both New York and the place where the cause of action accrued—in this case, Illinois. *Allstate*, 824 F. Supp. 2d at 1175.

Finally, the court notes that finding the presence of foreign substantive law dispositive as to which Illinois statute of limitations applies in a dispute would simply encourage forum shopping by any stockholder who failed to bring suit in the appropriate state in a timely manner. The Defendants point out that the statute of limitations for securities actions in Delaware is *also* three years. (*Id.* at 15.) The Plaintiffs' argument is, in effect, that while investors suing in Delaware under Delaware law are subject to a three-year statute of limitations, and investors suing in Illinois under Illinois law are subject to a three-year statute of limitations, investors suing in *Illinois* under *Delaware* law must be afforded a five-year statute of limitations. The Plaintiffs only hope at avoiding the limitations period in either state was by creating a mismatch between the substantive law of Delaware and the procedural law of Illinois and arguing that they should be rewarded for their delay and subsequent forum shopping. Three years is already "an age in the stock market." *Tregenza v. Great Am. Comms. Co.*, 12 F.3d 717, 722 (7th Cir. 1993). Federal securities law requires investors aware of the facts constituting a violation to sue within just two years. *See* 28 U.S.C. § 1658(b)(2); *Merck & Co. v. Reynolds*, 559 U.S. 633, 637 (2010). There is no support in the case law, nor any principled basis for lengthening the limitations period for securities actions in Illinois in this way.

**2.    The Statute of Limitations has Expired**

Having found that the three-year statute of limitations applies, the court must determine whether the Plaintiffs filed suit in the timely manner. The Defendants argue that the Plaintiffs Amended Complaint does not adequately rebut the admissions in their original complaint that show they were on inquiry notice of the alleged fraud by at least April 17, 2013—the day the PrivCo Report was released. (Second KP Defs.' MTD 10–13.) The Plaintiffs respond that the Amended Complaint both cures the deficiencies of the original complaint, and assert that, as a matter of law, the ISL requires "actual notice of facts," not "inquiry notice." (Second Pls.' Resp. Br. 16–17.) The Plaintiffs filed their suit in Illinois state court on October 14, 2016.

The ISL's limitations period begins to run upon the earlier of:

11

>   (1) the date upon which the party bringing the action has actual knowledge of the alleged violation of this Act; or
>
>   (2) the date upon which the party bringing the action has notice of facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation of this Act.

815 ILCS 5/13(D). The court dismissed the original complaint because it was "implausible" that the Plaintiffs would not be on notice of the potential claims based on the PrivCo Report, congressional hearings, and Weidner Complaint—all of which were available and widely publicized prior to October 2013. *Orgone I*, 2017 WL 3087730 at *9. To remedy their complaint, the court instructed the Plaintiffs to "expressly contradict the court's conclusion about the dates that they learned of the facts that would lead them to their claims." *Id.* at *10. The Plaintiffs have not done so, and the court stands by its earlier conclusion.

Rather than explicitly deny awareness of the PrivCo Report, congressional hearings, or Weidner Complaint, the Plaintiffs simply deleted all references to them from the Amended Complaint in an attempt to undo what they have already acknowledged to be the foundation of their case against the Defendants. (*See* Redline of Am. Compl. ¶¶ 3, 4, 6, 8, 11, 67, 125, 165, 167, 168, 169, 183, 184, 186, 204, 205, 208, 224, 226, 230, 242, 246, Ex. 1.A. to Second KP Defs.' MTD [86-2].) With respect to the Weidner Complaint, the Plaintiffs attempt to shift their knowledge of that case until it was cross-referenced in one of Fisker's bankruptcy filings on December 3, 2013. (Am. Compl. ¶ 8.) Notably, the Plaintiffs did not delete the numerous references to the confidential DOE documents they claim support their fraud claims—only the portions of those allegations which state that the documents were released in conjunction with the PrivCo Report in April. (*See, e.g.,* Redline of Am. Compl. ¶¶ 125, 184, 247.) Even the new allegations regarding the December 27, 2013, Atlas Complaint are carefully worded to say only that "*additional investors* [became] aware, for the first time, of potential wrongdoing" and not that

12

the Plaintiffs were themselves unaware—something they have shown they cannot prove.[3] (Am. Compl. ¶ 11) (emphasis added). None of this is sufficient to turn back the clock and save their case. It is simply not possible that the Plaintiffs would not have had "notice of facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation" by at least the end of April 2013, from the same highly visible PrivCo Report and congressional hearings that put the world on notice of the Defendants' allegedly fraudulent activities and Fisker's imminent collapse. 815 ILCS 5/13(D); *Orgone I*, 2017 WL 3087730 at *10. The Plaintiffs in this case are sophisticated investors. All of the named Plaintiffs invested more than $380,000 in Fisker stock. (Am. Compl. ¶¶ 22–26.) Orgone Capital III, LLC alone invested over $7.5 million. (*Id.*) To believe that these Plaintiffs would be unaware of televised hearings in the U.S. House of Representatives addressing Fisker's catastrophic misuse of taxpayer and investor funds stretches even the most generous definition of "willful blindness" to its breaking point—especially when these Plaintiffs have *already admitted* to knowledge of these hearings in their original complaint.

Perhaps realizing that their previous admissions weigh heavily against them, the Plaintiffs argue that the ISL requires "actual 'notice of facts,'" and not merely "inquiry notice." (Second Pls.' Resp. Br. 17.) The Plaintiffs claim that the phrase "inquiry notice" does not appear in the statute. (*Id.* at 17–18.) This may be true, but the notion that inquiry notice is not enough to start the clock runs contrary to the plain language of the statute, as well as the cases

---

[3]  The court also notes the Plaintiffs' questionable claim that they only learned about any "false and/or misleading statements made in connection with its purchase of Fisker Automotive Securities" at some uncertain date after the filing of the Delaware Atlas Complaint. (*See* Am. Compl. ¶¶ 22–26.) Plaintiffs' lawyers are the same ones who filed the Atlas Complaint, which relies heavily—and explicitly—on the PrivCo Report and congressional testimony. (*See* Second KP Defs.' MTD 3–5.) In addition, the court recognizes the Defendants' observation that, because the Plaintiffs' putative class of similarly situated investors includes entities already party to the Delaware *Atlas* suit, the "Plaintiffs' position that their putative class action is not time-barred because of when they learned certain information from *fellow putative class members* is unusual, to say the least." (Sur-Response in Support of Second KP Defs.' MTD [105], 4 n.2) (emphasis in original).

interpreting it. The ISL's statute of limitations starts the clock running at the earlier of (1) the date the plaintiff has "actual knowledge of the alleged violation" or (2) the date the plaintiff has "notice of facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation." 815 ILCS 5/13(D). The latter of these provisions clearly anticipates two events: an initial "notice of facts" sufficient to cause a reasonably diligent party to investigate the matter further, and a later moment where the party possesses the actual knowledge that his rights were violated. This parallels the common understanding of inquiry notice.

Courts in this district have unambiguously interpreted Section 5/13(D)(2) to mean "inquiry notice." *Grumhaus v. Comerica Securities, Inc.*, No. 99-C-1776, 2003 WL 2154185, at *2 (N.D. Ill. June 30, 2003); *Stone v. Chicago Investment Group, LLC*, No. 11-C-51, 2011 WL 6841817, at *3 (N.D. Ill. Dec. 29, 2011). Most importantly, the ISL established an "an objective test: not whether plaintiffs actually knew of the conduct but whether they reasonably should have known." *Grumhaus*, 2003 WL 2154185, at *2 (citing *Law v. Medco Research, Inc.*, 113 F.3d 781, 786 (7th Cir. 1997)). Even avoiding the specific term "inquiry notice," Illinois courts have consistently maintained that Section 5/13(D)(2) is objective in nature, and not concerned with a plaintiff's actual knowledge of the specific facts that establish a cause of action. *See Lucas v. Downtown Greenville Investors Ltd. P'ship*, 284 Ill. App. 3d 37, 46–47, 671 N.E.2d 389, 396 (2d Dist. 1996); *Blumenthal v. Flynn*, 2012 IL App (1st) 112306-U, at *6 (recognizing that the ISL's statute of limitations "differs significantly" from that of federal securities laws, which the Supreme Court had found to begin "when a reasonably diligent plaintiff *would have discovered* the facts constituting the violation." *See Merck*, 559 U.S. at 1789–90) (emphasis added).

The Plaintiffs' belief that the ISL requires "actual 'notice of facts'" essentially combines the two parts of Section 5/13(D) into one. *Compare* 815 ILCS 5/13(D)(1) ("<u>actual</u> knowledge") *with* 5/13(D)(2) ("<u>notice of facts</u>") (emphasis added). The Plaintiffs also argue that parties need not be diligent in obtaining the initial notice, only in acting upon that notice. *See In re Countrywide Financial Corp. Mortgage-Backed Securities Litigation*, 860 F. Supp. 2d 1062,

14

1076 (C.D. Cal. 2012) ("Reasonable diligence modifies the actual knowledge requirement in the second half [of Section 5/13(D)(2)], but not the notice requirement in the first half."). This is an accurate statement of the law, but not helpful to their case. The Plaintiffs already established that they had initial notice of Fisker's suspicious, potentially fraudulent, activities from the PrivCo Report and congressional hearings.[4]

The Amended Complaint embodies this same blurring of the legal standard, as the Plaintiff repeatedly highlights moments that establish actual knowledge of the Defendants' alleged violations. Rather than rebut their early notice from the PrivCo Report and congressional hearings, that Plaintiff cites to evidence from the Atlas Compaint that more appropriately speaks to Section 5/13(D)(1)'s "actual knowledge." Plaintiffs claim that: "Upon information and belief . . . the Atlas Complaint was, at the time it was filed, the only action brought by any investor relating to the misleading statements or omissions alleged therein in connection with purchases of Fisker Automotive Securities." (Am. Compl. ¶ 10.) Plaintiffs even go so far as to argue that "[e]ach Offering [of stock] gives rise to particular claims. There are distinct Offering documents, and investors varied with each Offering." (Plaintiffs' Sur-Reply in Opposition to Second KP Defs.' MTD [102-1] ("Second Pls.' Sur-Reply Br."), 3) (citing Am. Compl. ¶¶ 23–24.) These arguments are red herrings. The underlying information for all of the Plaintiffs' claims is the same, and the Defendants' alleged fraud was presented for the entire world to see no fewer than three times before October 14, 2013. Furthermore, the Plaintiffs' suggestion that AEI's stock offerings were truly unique, with different named Plaintiffs investing in different combinations of the six offerings, undermines the Plaintiffs' insistence that they are suing "on behalf of a class of all those similarly situated." (Am. Compl. 1.)

---

[4] Even assuming that Plaintiffs did not have any idea about Fisker's financial situation or the Defendants' malfeasance until other investors laid the case out for them in detail in December 2013, the fact that they *still* waited for two years and ten months to file this additional lawsuit hardly suggests "diligence."

15

Finally, Plaintiffs also selectively misread this court's previous opinion in an attempt to give it a meaning it cannot bear. The Plaintiffs repeatedly quote the court's statement that "allegations in superseded pleadings do not constitute judicial admissions." (Second Pls.' Resp. Br. 1, 16–17; Second Pls.' Sur-Reply Br. 3.) (quoting *Orgone I*, 2017 WL 3087730 at *10). But this does not mean the slate is wiped clean whenever a plaintiff amends his complaint. *See* 188 LLC, 300 F.3d at 736 ("[A] party may offer earlier versions of its opponent's pleadings as evidence of the facts therein, but they are not judicial admissions, and the amending party may offer evidence to rebut its superseded allegations.") (citing *DePaepe v. General Motors Corp.*, 141 F.3d 715, 719 (7th Cir. 1998) The court was merely reminding the parties that the Plaintiffs would not be strictly bound by the original complaint should the Plaintiffs prove themselves able to rebut their earlier assertions. *See, e.g., Nelson v. City of Chicago*, 810 F.3d 1061, 1074 n.6 (7th Cir. 2016) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them.") The decision to permit or exclude superseded pleadings is within the district court's sound discretion. *DePaepe*, 141 F.3d at 719. Ignoring the public-record information that Plaintiffs identified earlier would make little sense.

Because the court finds the Plaintiffs' claims against all Defendants barred by the statute of limitations, the court need not address the question of its personal jurisdiction over specific Defendant John Doerr.

## **CONCLUSION**

For the reasons stated, the Defendants' Motions to Dismiss and Motions for Judgment on the Pleadings [85, 90] are GRANTED. This case is dismissed with prejudice.

ENTER:

Dated: March 19, 2018

_____
REBECCA R. PALLMEYER
United States District Judge